† BRYANT, *complainant, versus* GLIDDEN *& al.*

In the trial of a complaint for flowing lands by means of a mill-dam, after the commissioners have been appointed and reported the damages, such commissioners cannot be interrogated whether they exercised great care in their proceedings, and in arriving at their conclusion. The jury are to judge whether the commissioners were inattentive to their duty by their own standard.

Of the duties of commissioners appointed under a complaint for flowing lands.

Of the evidence required to set aside a verdict impeaching such commissioners' report.

Where such report is impeached by the verdict, merely showing that the verdict is erroneous, is not sufficient cause to set it aside, but it must appear that the jury acted under improper influences, or were affected by some bias, or misconceived some of the essential facts of the case.

ON EXCEPTIONS from *Nisi Prius*, CUTTING, J., presiding. COMPLAINT, for flowing land by means of a mill-dam.

This case was before the Court, 36 Maine, 36, and the nature of it is therein fully stated.

At the trial, the counsel for respondents contended, that in order to impeach the report of the commissioners, the jury must be satisfied that from the evidence adduced before the commissioners by the parties, and by their view of the premises, they were influenced by bias or prejudice, or were inattentive or negligent of their duties in the premises.

The defendants propounded to the chairman of the commissioners, who was a witness, the question — "whether or not they exercised great care in the discharge of their duty in examining the premises, hearing the parties and arriving at their final decision and making their report," which being

objected to by the complainants, was rejected by the Court, but he was permitted to state what they did in the discharge of their duty.

The Court instructed the jury that the report of the commissioners was conclusive, unless impeached by the complainant, to do which the burden of proof was on him to satisfy the jury, that the commissioners in the discharge of their duty, committed an error of such an extraordinary character or grossness as to imply that it was occasioned by some partiality, bias, prejudice, inattention to, or unfaithfulfulness in the discharge of that duty, and that if such error implied the mildest of these terms, such as " inattention to," it was a sufficient impeachment to authorize them to correct or set aside the report.

The jury returned the following verdict : —

The jury find that the flowing of the complainant's land described in his complaint, did occasion damage to the same, and for three years next before the institution of said complaint they assess damages for the complainant in the sum of one hundred and twenty-nine dollars and sixteen cents.

The jury further find that the yearly damages sustained by the complainant by the flowing of his said lands since the institution of said complaint, is twenty-seven dollars and eighteen cents.

The jury further find that it is necessary, that the respondents should hereafter be allowed to flow the round or upper meadow, (so called,) and the lower meadow, (so called,) both embraced in the land described in said complaint, up to the upper margin thereof, which separates the same from the adjoining upland at all times, except as follows : That said round or upper meadow separated from said lower meadow by a line drawn along the northern margin of the canal, (so called,) near the great bluff, ought not to be flowed, and the respondents are prohibited from flowing the same from the tenth day of May to the first day of Sept. in each year.

And the said lower meadow from said margin of said canal,

to a line crossing the opening at the foot of said lower meadow, running parallel with the road near the same, ought not to be flowed, and the respondents are prohibited from flowing the same from the first day of July to the first day of September in each year. And that no future damages will be done to said lands by the flowing of the same as above provided for and regulated.

A motion was filed to set this verdict aside as being against law, evidence and the weight of evidence, and because by it justice had not been done between the parties, but great injustice had been done to the respondents.

Upon this motion the argument of the respondents was confined to the report of the commissioners.

A great number of witnesses was examined, but the nature and bearing of the testimony appear in the opinion of the Court.

*Tallman,* with whom was *Ingalls,* in support of the exceptions and motion.

*Gould,* for the complainant.

TENNEY, J. — Inquiry was made by the counsel for the respondents of one of the commissioners " whether or not, they exercised great care, in the discharge of their duty, in examining the premises, hearing the parties, and arriving at their final decision and making their report." Objection being made, the answer to the question was not allowed by the Court to be received.

It is now insisted, that the question was proper, as attention and care is a fact, independent of any outward appearances, circumstances or acts, being an operation of the mind merely. It was the purpose of the complainant to show, that the commissioners committed an error of such a character, or grossness, as to imply that it was occasioned, at least, by inattention to the discharge of their duty. This error was not attempted to be proved in any other manner, than by the acts of the commissioners, and the result to which they came upon the facts adduced. In the perform-

ance of the service undertaken by the commissioners, what they might have regarded as great mental attention to the transactions taking place touching the business before them, independent of their own action, or the conclusions to which they might come, could be of no importance to the parties. Evidence of a design to do all, which they believed the law required of them, in the discharge of their duty, would not, under the law as settled in this case, protect their report from impeachment, if the jury should be satisfied, that the things which they intended to do, fell far short of the duty, which the law required them to perform, and that their errors were so gross, that in the judgment of the jury it implied inattention to the discharge of that duty. On the principle contended for, the most palpable blunders, which were highly injurious to a party, might be overcome in effect, by the testimony of the one, who committed them, that he was very attentive to all the transactions and intended to do all, which duty demanded of him.

But the argument of counsel is not properly applicable to the question put, and ruled by the Court to be inadmissible. The question was not, whether it was the intention of the commissioner to bestow a great care, but whether such care was not *exercised*.

The complainant attempted to place before the jury the state of things presented to the commissioners when they were upon the ground, and thereby to prove that the results to which they arrived, as shown by the report, were so palpably erroneous, that at least inattention to the discharge of their duty was imputable to them. This was the issue before the jury, to be determined by their conclusions alone, upon the facts in evidence. The conclusions of others from those facts, could have had no legitimate influence, and were inadmissible. The jury were to form their own standard, by which to determine inattention in the commissioners to the discharge of their duty, and by which also they were to measure the degree of care, which should have been exercised by them. Whether the commissioners exercised the

degree of care, which they would treat as great, was not that which could have properly any effect upon the minds of the jury, and the answer to the question proposed was inadmissible.

The respondents rely upon the motion to set aside the verdict for the various reasons assigned therein.

The instructions to the jury being legally correct, we must assume that they were observed till the contrary is clearly manifest.   Wherein instructions have been violated has not been shown.

The jury which tried the cause on the original issues before the appointment of commissioners, found that the dam complained of did flow higher than did the former dam, under which the respondents claimed a prescriptive right to flow.   The commissioners were bound to keep this fact in view; and notwithstanding the greater light, which may have been thrown upon that question, as well as those which they were called upon to settle, even if it were sufficient to satisfy them of the error of the jury, they were bound to treat that verdict as conclusive upon them, while in the performance of their duty.   They found no damage, and if the evidence convinced them, that none had been sustained, they were warranted in so finding.   For damages did not necessarily follow the proof of simply a higher flowing.   The increased height might be so small, or such was the character and quality of the land, that the additional elevation of the water would cause no damage.

The complainant undertook to impeach the report of the commissioners, by showing such conduct, or remissness in them, in some respects, as would imply the existence of that, which would render the report invalid.   To do this, numerous witnesses were introduced, who were examined and cross-examined with great minuteness, and at much length, to show the condition of the old dam, the old mills and other objects, which existed about them and about the pond at the same time, as compared with the new dam, the new mills and fixtures, believed to have a bearing upon the question

at issue. The state of the water in the pond, which is of great extent, at different seasons of the year, and at different places when the old dam was in existence, and also the state of the water, at the same seasons of the year and in the same places, since the erection of the new dam, was attempted to be shown by the complainant. The respondents, on the other hand, introduced evidence upon these several points, by many witnesses, whose testimony was supposed to tend to a different result from that presented on the other side.

A question may have arisen also from the proof, whether the increased height of the water flowed by the new dam over that flowed by the old one, which by some of the testimony appeared to have been very considerable, was occasioned by a higher dam, or by a superior capacity to hold the water, without leakage, or by a greater perfection of the machinery in the mills, which required less water for its operation, and thus from one or both of these causes, the water was retained in the pond and on the adjacent meadows and uplands, a longer period of time in each year.

From all the evidence reported, which is exceedingly voluminous, and in many respects contradictory, the questions in dispute before the commissioners were, as before the jury, many and various. The case as a whole was one of .unusual complexity, involving philosophical principles, in connection with disputed facts.

It is not understood to be insisted in argument, that the commissioners were influenced by positive sinister purposes. Their known character and standing in society is such, that perhaps nothing short of clear and overwhelming evidence, would lead the mind to such a conclusion. But they are to be judged by the same law and the same rules, which are applied to every individual, and by them they must stand or fall.

In a case like this, some facts may have so far escaped the notice of the commissioners, and may have been deemed so important by the jury, that in their judgment, the report

could not well consist therewith; and hence the want of this attention, may have been deemed of so extraordinary a character, as to imply such an omission, and disregard of duty as to be a successful impeachment of the report under the instructions given.

We do not by any means intend to suggest, that the commissioners did fall into such errors, for such is not the question before us. The case taken together, is one in which the Court might well doubt, on an examination of all the evidence spread out before it, whether therefrom it could come to a conclusion, which would with absolute certainty comport with perfect justice. The jury have found at least inattention in the commissioners, in the performance of the service undertaken by them; for such was the issue. Before the verdict can be disturbed under this motion, it must satisfactorily appear from the evidence reported, that the jury were under improper influences, guided by prejudice, or affected by some bias, unwarranted by the evidence, or that they in some essential particular, misconceived the facts. And the question now before the Court is, whether the jury conducted thus improperly in finding the commissioners guilty of neglect in the discharge of their duty. This is an important question, and should not be answered in the affirmative, excepting from the evidence which produces conviction in the mind, not simply that the verdict was erroneous, but the direct fruit of those feelings and views which disqualified them to sit as jurors in the case. Such is not the character of the evidence reported, in the estimation of the Court.          *Exceptions and motion overruled.*

*Judgment on the verdict.*

APPLETON, J., concurred in the result.